**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**JIM WALTER RESOURCES, INC., a corporation, Plaintiff,**

**v.**

**S.E. BELCHER, Jr. and Alabama Land and Mineral Corp., a corporation, Defendants.**

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1, 90–11997– 8P1 and 89–9738–8P1.**

**Adv. No. 92–469.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 5, 1992.

Don Stichter, Tampa, Fla., and Bradley, Arant, Rose & White, Birmingham, Ala., for debtors.

Wilbur Hust, Jr., Tuscaloosa, Ala., Charles H. Dittmar, Jr., Tampa, Fla., L. Murray Alley, Birmingham, Ala., for defendants.

ORDER ON MOTION TO TRANSFER VENUE AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case filed by Hillsborough Holding Corporation (HHC), now renamed Walter Industries, Inc. (Walter Industries); Jim Walter Resources, Inc. (Resources); and its 31–sister corporations, all of which are wholly-owned subsidiaries of HHC. The present matter under consideration is a Complaint filed by Resources against S.E. Belcher, Jr. (Belcher) and Alabama Land and Mineral Corp. (Alabama Land).

In its Complaint, Resources set forth four separate claims in four separate counts. In Count I, Resources seeks a money judgment based on the allegation that Alabama Land is guilty of civil conversion of coal to which Resources claims to have a right. In Count II, Resources seeks sanctions to be imposed on Alabama Land for the alleged violation of the automatic stay and also seeks injunctive relief to prevent any continuing and further violations. In Count III, Resources seeks declaratory relief relating to its claim of a breach of a lease and in Count IV, it seeks the same relief seeking a declaration that Alabama Land is guilty of trespass.

The Complaint filed by Resources was immediately challenged by Alabama Land and Belcher, both of whom promptly filed a Motion to Dismiss or, in the Alternative, To Transfer The Venue of this adversary proceeding to the Northern District of Alabama. In its Motions, Alabama Land and Belcher contend that none of the Counts state a claim for which relief can be granted or, in the alternative, that the venue in this District is improper, and this adversary proceeding should be transferred to the Northern District of Alabama pursuant to 28 U.S.C. § 1409(d) or, in the alternative, pursuant to 28 U.S.C. § 1412. The reliance on the latter Section by Alabama Land and Belcher is based on the allegation that it is for the convenience of the parties and the interest of justice to transfer this adversary proceeding to the Northern District of Alabama. The facts which are relevant to the Motions under consideration as appear from the record are without dispute and are as follows:

On May 5, 1975, Belcher and his wife, who own a tract of land located in Jefferson and Tuscaloosa Counties, Alabama, granted an exclusive right to U.S. Pipe & Foundry Company (U.S. Pipe), a sister corporation of Resources, to conduct a mining operation on their property. The right granted authorized U.S. Pipe to mine and remove by "underground shaft, slope or drift mining operation only and not otherwise coal from what is known as the Blue Creek Seam, or the lower bench of the Mary Lee Seam in lands located in Jefferson and Tuscaloosa Counties, Alabama." The lease granted by the Belchers had an initial term of 20 years beginning November, 1975 and terminating October 31, 1995. The lease also granted an option to the lessee permitting the lessee to renew the lease for an additional term of 10 years provided that the lease is not in default.

Resources, its parent HHC, and its sister corporations including U.S. Pipe, filed their Petitions for Relief in this Court under Chapter 11 on December 27, 1989. On March 9, 1991, U.S. Pipe assigned its rights under the lease described above to Resources.

This controversy centers around the right of Alabama Land to conduct mining operations on the same land involved in the U.S. Pipe Lease owned by the Belchers. It is admitted that Alabama Land obtained a lease, executed on December 23, 1983, from the Belchers, who granted surface mining rights, initially to several different entities, whose rights were ultimately transferred to Alabama Land. (Exh. A to Affidavit of S.E. Belcher).

The record leaves no doubt that Resources is an Alabama corporation in good standing, incorporated on September 21, 1988. It is equally without dispute that Alabama Land is also an Alabama corporation, and the Belchers are residents and citizens of Alabama. The land involved in this controversy is located in Alabama. Moreover, the surface mining activity of Alabama Land is conducted pursuant to a surface mining permit issued by the State of Alabama Surface Mining Commission, permit No. 3619, license No. 336 (Exh. B to the Motion to Transfer). It is further without dispute that Resources employed with proper authorization from this Court the prominent law firm of Bradley, Arant, Rose & White of Birmingham (Law Firm) who has represented and still is representing Resources. The Law Firm had earlier conducted litigation involving Resources concerning the mining operations of Resources.

Alabama Land is represented by the law firm of Cabaniss, Johnston, Gardner, Du-

mas & O'Neal of Birmingham, Alabama. All claims in the Complaint with the exception of a claim set forth in Count II, which claimed an alleged violation of the automatic stay and the related claim which seeks injunctive relief, are governed by Alabama law, which governs the mining rights in Alabama. All relevant material witnesses reside in Alabama, and it is without dispute that Resources' only connection with this District is that its Chapter 11 case is pending within this District solely because of its parent, HHC, headquartered in Tampa, Florida.

The Motions under consideration as they relate to the Motion to Transfer primarily rely on § 1409(d) of 28 U.S.C. which provides as follows:

§ 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11.

. . . . .

(d) A trustee may commence a proceeding arising under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court of the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

. . . . .

The alternative ground for transfer urged by both Belcher and Alabama Land is based on 28 U.S.C. § 1412 which provides as follows:

§ 1412. Change of venue.

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

■ As a preliminary matter, it should be noted that theoretically, the literal reading of the statute, *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) mandates that only a District Court may transfer cases or proceedings pursuant 28 U.S.C. § 1412 and, if the Motion is granted, it is technically transferred to a District Court and not to the Bankruptcy Court of the transferee District. Notwithstanding, both parties agree and there is no contention to the contrary, that it is proper for this Court to rule on the Motion and this Court may transfer this Adversary Proceeding pursuant to 28 U.S.C. § 1412 directly to another bankruptcy court bypassing the district court, provided, of course, that bankruptcy court to whom it is transferred also operates under the general reference issued by the district court of that district pursuant to 28 U.S.C. § 157(a). This will avoid the tortuous and totally pointless route and expense of first, to file a Motion to Withdraw Reference; second, to file a Motion to Transfer to the District Court; third, if the district court grants same, to order the transfer to the proper district court; and fourth, that the proper district may enter an Order of Special Reference and refer the matter to the bankruptcy court if so deemed to be advised or retain the transferred proceeding, a highly unlikely event. In this connection, it should be noted that all 94 districts in the country have standing orders of general reference entered pursuant to 28 U.S.C. § 157(a).

■ This leaves for consideration the merits of the Motion filed by Alabama Land and Belcher. As noted earlier, this record leaves no doubt that even disregarding the proposition urged by both movants, which is based in 28 U.S.C. § 1409(d) that the venue is improper in this District, it is clear that if there was one civil litigation where the venue transfer is mandated for the convenience of parties and for the interest of justice, this is the one. The *only* connection Resources has with this District is the *fortuitous* event that its Chapter 11 case is pending here only because Resources is a wholly-owned subsidiary of HHC, which filed its Chapter 11 case in this District. Otherwise this Adversary Proceeding has no connection with this District whatsoever. The contention of the Debtor that this matter could be litigated in this forum faster than in the Northern District of Alabama has no support in this record.

Despite the fact that earlier litigation involving Resources with U.S. Steel was litigated within six weeks from the date of the commencement, which suit also involved coal mining in Alabama, there is no indication whatsoever in this record that in the present instance the same could be accomplished. One always must keep in mind, and it should be noted, that the confirmation process of HHC and its subsidiaries, including Resources, are not yet at home base and will have to play several more very difficult innings before this game could be successfully finished and brought to conclusion.

■ Even assuming that this is the *forum conveniens*, which is clearly not the case, this Court is also satisfied that under § 1409(d) the venue is improper in this District. The claims asserted by Resources are based on postpetition events. The fact that the lease between Resources and Belcher was entered to prepetition is of no moment. The tort alleged in Count I clearly occurred postpetition, so is the trespass claim set forth in Count IV. Of course, the alleged violation of the automatic stay also obviously occurred postpetition. Thus, with the possible exception of the claim for declaratory relief set forth in Count III concerning the rights flowing from the lease as it relates to an interpretation of its terms, nothing occurred prepetition at all involving the breach alleged. Thus, based on 28 U.S.C. 1409(d), the venue is clearly improper in this District.

■ Improper venue, of course, is not the basis for dismissal, and the appropriate remedy is to transfer the proceeding to the proper district. *In re Schear & Associates, Inc.*, 47 B.R. 544 (Bankr.S.D.Fla. 1985). The reliance of Resources on the case of *Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33 (S.D.N.Y. 1988), is misplaced and furnishes scant, if any, support for the proposition urged by Resources in opposing the Motions to Transfer. In *Goldberg Holding*, the district court in New York transferred the adversary proceeding to the Western District of Pennsylvania, not because the Chapter 11 case was pending in that district, but because of several factors, including the fact specifically found by the District Court that the convenience of the parties and the interest of justice mandated a transfer to that district. As noted earlier, all material witnesses are located in Alabama, none of whom would be subject to subpoena to appear in the Middle District of Florida and, of course, all legal points involved, one of which, the right to mine coal in Alabama, is governed by Alabama law, and not by Florida law. In sum, there is nothing in the totality of the picture which would even remotely justify the retention of this adversary proceeding in this District. For this reason, the Motion to Transfer is well taken.

Defendants correctly rely on the case of *In re Southwinds Associates*, 115 B.R. 857, 862 (Bkrtcy.W.D.Pa.1990). In *Southwinds*, the court declined to transfer the venue of an adversary proceeding, but recognized eight significant factors pertinent to determining whether a change in venue is appropriate. The factors are as follows:

1. the location of the Plaintiff and Defendant;
2. the ease of access to necessary proof;
3. the availability of subpoena power for the unwilling witnesses;
4. the expense related to obtaining willing witnesses;
5. the enforceability of any judgment rendered;
6. the ability to receive a fair trial;
7. the state's interest in having local controversies decided within its borders, by those familiar with its law; and,
8. the economies of the estate administration.

Additionally, similar factors to those above are found in *In re Geauga Trenching*, 110 B.R. 638 (Bkrtcy.E.D.N.Y.1990). All factors above clearly lean in favor of transferring venue of this action to the Northern District of Alabama. Not one factor suggests that the case should be left in the Middle District of Florida.

This leaves for consideration the Motion to Dismiss For Failure To State a Cause of Action filed by both Belcher and Alabama Land. In light of the previous statement

concerning venue, this Court declines to rule on the Motion and the same shall be presented to the Bankruptcy Court in the Northern District of Alabama. Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that ruling on the Motion to Dismiss for Failure to State a Claim of Action is hereby deferred, and it is further

ORDERED, ADJUDGED AND DE-CREED that the Motion to Transfer the Adversary Proceeding Pursuant to 28 U.S.C. §§ 1409(d) and 1412 is hereby granted, and the Clerk of this Court shall immediately transfer all records of this adversary proceeding to the bankruptcy court in the Northern District of Alabama.

DONE AND ORDERED.